**NOT FOR PUBLICATION**

```
                     UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY

                                    :
ANDREA DEALMAGRO,                   :  CIVIL ACTION NO. 10-4149 (MLC)
                                    :
     Plaintiff,                     :  MEMORANDUM OPINION
                                    :
     v.                             :
                                    :
NEW JERSEY ELECTION LAW             :
ENFORCEMENT COMMISSION,             :
                                    :
     Defendant.                     :
                                    :
```

**COOPER, District Judge**

The pro se Plaintiff, Andrea Dealmagro, brought this action for a judgment declaring New Jersey Administrative Code ("N.J.A.C.") § 19:25-15.49(a)-2 unconstitutional. (Dkt. entry no. 1, Compl.) The Defendant, the New Jersey Election Law Enforcement Commission ("ELEC"), moves to dismiss the Complaint under either Federal Rule of Civil Procedure ("Rule") 12(b)(1) or Rule 12(b)(6). (Dkt. entry no. 5.) The Court determines the motion without oral argument pursuant to Rule 78(b). The Court will grant the Motion and dismiss the Complaint.

                            BACKGROUND

The Plaintiff, a New Jersey resident, claims to be an independent candidate for the 2013 New Jersey gubernatorial election. (Compl. at 1.) Part of the Plaintiff's political platform is that she will abstain from fundraising and will refuse all financial campaign contributions. (Id. at 2, 5.) The

Plaintiff asserts that "openly renouncing to all fundraising is a form of political speech." (Id. at 2.)

To be a candidate for governor in New Jersey, one must be nominated by petition or at the primary for the general election. N.J.S.A. § 19:13-1. Independent candidates who wish to appear on the ballot for the 2013 gubernatorial election must obtain 800 signatures on a nominating petition. N.J.S.A. § 19:13-5. In addition to other procedural requirements, see N.J.S.A. §§ 19:13-5-19:13-8, 19:13-21, the petition must be submitted to the Secretary of State on the date of the 2013 primary election. N.J.S.A. § 19:13-9. Though the Plaintiff has a political platform, she has not yet filed a petition to be an independent candidate for governor in 2013. (Dkt. entry no. 6, Pl. Opp'n at 2-3; Id., Ex. A, Platform.)

ELEC is a state agency charged with administering the New Jersey Campaign Contributions and Expenditures Reporting Act, N.J.S.A. § 19:44A-1, et seq., including the Gubernatorial Public Financing Program ("GPFP"). (Dkt. entry no. 5, Def. Br. at 1.) N.J.S.A. § 19:44A-5. The GPFP provides an opportunity for candidates to obtain public matching funds. N.J.S.A. § 19:44A-27. Candidates who receive matching funds are required to participate in a series of interactive public debates. N.J.S.A. § 19:44A-45. Candidates who do not receive matching funds may choose to participate in these debates, if they meet the

2

requirements for being a "qualified candidate." See N.J.S.A. § 19:44A-3(m).  To be a qualified candidate, a candidate who does not participate in the matching fund program must satisfy a financial qualification threshold.  (Def. Br. at 10.)  For the 2009 election, the requirement was as follows:

> a) A candidate who has not by September 1 preceding a general election applied to the Commission for public matching funds may elect to participate in the series of interactive gubernatorial general election debates by:
>     1. Notifying the Commission in writing no later than September 1 preceding the general election for the office of Governor of his or her intent to participate in the series of gubernatorial general election debates; and
>     2. Filing a statement of qualification containing evidence that $340,000 has been deposited and expended pursuant to N.J.S.A. 19:44A-32 for gubernatorial general election expenses. The statement of qualification shall contain the same information, as that required at N.J.A.C. 19:25-15.48(a).

N.J.A.C. § 19:25-15.49(a).  This monetary threshold is adjusted quadrennially.  N.J.S.A. § 19:44A-7.1.  The debates will only be held if at least two candidates are "qualified," because they either received public funds or elect to participate voluntarily.  N.J.S.A. § 19:44A-45.

The Plaintiff claims that N.J.A.C. § 19:25-15.49(a)-2 (the "Threshold Provision"), as-applied and facially, violates the First and Fourteenth Amendments to the United States Constitution, in that it conflicts with her free speech and association rights, i.e., her political stance of eschewing fundraising and contributions.  (Compl. at 5.)  ELEC argues that

3

(1) the Plaintiff does not have standing, (2) the Plaintiff's claims are not ripe, (3) the Threshold Provision does not violate the First Amendment right to free speech and association, and (4) the Threshold Provision does not violate the Fourteenth Amendment right to equal protection.  (See Def. Br.)

## DISCUSSION

### I.    Legal Standards for Motion to Dismiss

A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction.  Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).  The "issue of standing is jurisdictional." St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 240 (3d Cir. 2000).  A plaintiff seeking to invoke federal jurisdiction bears the burden of demonstrating standing, and a federal court must dismiss the underlying claim without reaching the merits if the plaintiff cannot meet the requirements of standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Mariana v. Fisher, 338 F.3d 189, 204-05 (3d Cir. 2003).

A motion under Rule 12(b)(6), in contrast, tests the legal sufficiency of a Complaint, and the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, a "complaint must

contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'-- that the 'pleader is entitled to relief.'" Id. at 1950 (quoting Rule 8(a)(2)).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court may consider the Complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**II. Claims**

Because Plaintiff is proceeding pro se, the Complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers[.]" Brown v. City of Long Branch, 380 Fed.Appx. 235, 238 (3d Cir. 2010) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  Nevertheless, "[t]o survive a motion to dismiss, a complaint-even a pro se complaint-'must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face.'" Thakar v. Tan, 372 Fed.Appx. 325, 328 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1949). "The factual allegations in the complaint must be sufficient to "'raise a right to relief above the speculative level.'" Brown, 380 Fed.Appx. at 238 (quoting Phillips, 515 F.3d at 234).

The Plaintiff here has straightforwardly pleaded traditional freedom of speech claims under the First Amendment and equal protection claims under the Fourteenth Amendment. (Compl. at 5-6.) Because "[l]aws that affect candidates always have at least some theoretical, correlative effect on voters," the Plaintiff may have also made out claims for a violation of her associational rights and the associational rights of voters. Bullock v. Carter, 405 U.S. 134, 142 (1972); see also Anderson v. Celebrezze, 460 U.S. 780, 793 (1983); Piccolo v. N.Y. City Campaign Fin. Bd., No. 05-7040, 2007 WL 2844939, at *11 (S.D.N.Y. Sept. 28, 2007). Although the Plaintiff has not explicitly pleaded these violations, the Complaint (1) cites Buckley v. Valeo, 424 U.S. 1, 15, 24-25 (1976), which discusses them, (2) claims First and Fourteenth Amendment violations generally, and (3) alleges in Count II that the Threshold Provision "bans [her and others similarly situated] from holding assembly with the People." (Compl. at 5-6.) Cf. Winston v. Bradford Window Co., No. 09-226, 2010 WL 3632707, at *3 (W.D. Pa. Sept. 10, 2010)

6

(finding insufficient pleading where "complaint fails even to identify the actual statutes upon which Plaintiff purports to rely, let alone a particular provision giving Plaintiff a substantive right to relief"). Additionally, the purpose of the pleading rules are to ensure that the Defendant has fair notice of the claims against it. Twombly, 550 U.S. at 555. Here, ELEC responded to the issue of voters' rights in its Motion, and so apparently had notice. (Def. Br. at 17.) Regardless, the Court will dismiss all of the Plaintiff's claims for lack of standing.

### III. Standing

Federal judicial power extends only to actual cases or controversies. U.S. Const. art. III, § 2; Flast v. Cohen, 392 U.S. 83, 95 (1968). Plaintiffs must possess "standing" to challenge the action sought to be adjudicated. Hein v. Freedom From Religion Found., 551 U.S. 587, 597 (2007); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976). This principle of standing encompasses both constitutional and prudential components. Warth v. Seldin, 422 U.S. 490, 498 (1975). At an "irreducible constitutional minimum," a plaintiff must allege (1) an actual or imminent personal injury (2) fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable judicial decision. Lujan, 504 U.S. at 560-61; Pa. Psych. Soc'y v. Green Spring Health Serv., Inc., 280 F.3d 278, 283 (3d Cir. 2002) (stating plaintiff therein had to demonstrate "a cognizable

injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action" to establish standing). "Since these are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each of these elements must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Pa. Prison Soc'y v. Cortes, 508 F.3d 156, 161 (3d Cir. 2007). Thus, standing enables federal courts to identify those disputes that are appropriately resolved through the judicial process. Id. at 162.

An Article III injury in fact must be "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560; see also City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 (1983) (explaining that "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical"); Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997) (holding that a litigant only has standing based on a threatened future injury if she can demonstrate that the injury "is credible and immediate, and not merely abstract or speculative"). Here, the Plaintiff's Complaint states an intent to run for Governor of New Jersey in November 2013 - more than

two and a half years from now, and more than three years from the filing of the Complaint - but it does not specify any preparations undertaken beyond declaring her political position not to fundraise or accept financial contributions. (Compl. at 1, 2.) The Plaintiff does little more in her opposition brief, attaching a "Program for 2014" without any evidence of when it was prepared and alleging its publication online without providing any citation. (Platform; Pl. Opp'n at 3.)

It is true that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan, 504 U.S. at 561 (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)). But even "[o]n a motion to dismiss for lack of standing . . . the court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative." Stevens v. Harper, 213 F.R.D. 358, 370 (E.D. Cal. 2002); see also Simon, 426 U.S. at 44 (explaining that "unadorned speculation will not suffice to invoke the federal judicial power").

"To be sure, courts have recognized that, in certain circumstances, threatened future harms to prospective candidates can be sufficiently imminent to confer standing under Article III." Laroque v. Holder, No. 10-0561, 2010 WL 5153603, at *16

(D.D.C. Dec. 20, 2010) (citing various examples). But these typically involve incumbents or nominees of established political parties. Id. Another District of New Jersey case addressing this area of New Jersey election law involved an official independent candidate. Arons v. Donovan, 882 F.Supp. 379, 381-82 (D.N.J. 1995);[1] see also Rogers v. N.Y. City Bd. of Elections, 988 F.Supp. 409, 410 (S.D.N.Y. 1997) (where challenger of debate criteria was official candidate). Cases that recognize standing for prospective independent candidates have involved challenges to ballot access laws - the very barriers preventing them from becoming candidates in the first place. Belitskus v. Pizzingrilli, 343 F.3d 632, 641 (3d Cir. 2003) (standing for non-indigent candidates challenging the filing fee waiver for indigent candidates only); Biener v. Calio, 361 F.3d 206, 210-11 (3d Cir. 2004) (candidate had standing to challenge the filing fee he had paid himself, but not to challenge it on behalf of other non-indigent would be candidates who had not paid it).

The Plaintiff here has not filed a nominating petition and does not allege she has collected enough signatures to do so. (Pl. Opp'n at 2-3.) Nor does she allege this process is an illegal impediment to her candidacy. The Plaintiff argues

---

[1] Though Arons does not specifically state that plaintiff filed an 800-signature petition, she was eligible to have a 500-word statement sent to voters, which is something only available to ballot-eligible candidates. Id. at 382; N.J.S.A. § 19:44A-37.

10

instead that the Threshold Provision is the most formidable obstacle to her run for governor.  (Id.)  That may be so, but the petition signature requirement is an actual hurdle that the Plaintiff must surmount before gaining official candidate status.  As it stands now, enforcement of the Threshold Provision does not harm the Plaintiff because she would still be excluded from the debates on this real technicality.  Viewed another way, if the Court were to declare the Threshold Provision unconstitutional at this juncture, voters would not even be able to cast a ballot for the Plaintiff, much less benefit from her debate participation.

The Plaintiff, moreover, cites "no case in which a court has ever found standing based on an alleged injury to a prospective candidate who [vows] to run for political office at some point in the future, but has never before held office, is not then a party nominee, and has not . . . taken any preparations whatsoever in support of [her] candidacy.  Nor has the Court located such a case."  Laroque, 2010 WL 5153603, at *16.  The Court agrees with Laroque, in that finding standing here "would be holding that any individual can meet the imminence criterion for an Article III injury in fact simply by alleging that [s]he intends to run for political office at some point within the next [three years]."  Id. at *15.  The Threshold Provision affects gubernatorial candidates; because the Plaintiff is not one, she cannot allege an injury in fact sufficient for Article III standing.

11

Even if the Plaintiff alleged injuries that are sufficiently "actual or imminent" for purposes of Article III, the Complaint also suffers from ripeness problems. ELEC argues that there are several future contingencies that must occur before the Plaintiff's claims are ripe. (Def. Br. at 8.) The Plaintiff, conversely, contends she is entitled to a "prior-to-enforcement" challenge because the Complaint "has a de facto expiration date of September 1, 2013" and "time is of the essence." (Pl. Opp'n at 5.) She argues the Threshold Provision is the "only insurmountable barrier for independent candidates" and the "single most important obstacle for my debating the incumbent and his democratic [sic] opponent in 2013." (Pl. Opp'n at 5, 3.)

Ripeness ultimately derives from Article III's requirement that federal courts may decide only cases and controversies. Nextel Commc'ns of Mid-Atl. v. City of Margate, 305 F.3d 188, 192 (3d Cir. 2002). The ripeness doctrine determines "whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Peachlum v. City of York, Pa., 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted). It "prevents judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Lauderbaugh v. Hopewell Twp., 319 F.3d 568, 575 (3d Cir. 2003).

To demonstrate ripeness, the Plaintiff must show either a specific present objective harm or the threat of specific future harm. Laird v. Tatum, 408 U.S. 1, 14 (1972). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (internal citations omitted). Whether to engage in pre-enforcement review in the context of a declaratory judgment action depends on (1) the parties' adverse legal interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment. Surrick v. Killion, 449 F.3d 520, 527 (3d Cir. 2006); Step-Saver Data Sys. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990). "In assessing the adversity of the parties' interest, courts look to '[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm.'" NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 342 n.9 (3d Cir. 2001).[2]

---

[2] Admittedly, the Plaintiff's facial First Amendment claim would not suffer from the same ripeness concerns. Peachlum, 333 F.3d at 435. But on the merits, both overbreadth and facially void challenges would likely meet with some difficulty. See Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 902 F.Supp. 492, 516-17 (D.N.J. 1995) ("Courts should not engage in overbreadth analysis where a plaintiff claims that a statute is overbroad precisely because it applies to him."), aff'd, 99 F.3d 101 (3d Cir. 1996), and Brown v. City of Pitt., 586 F.3d 263, 269 (3d Cir. 2009) (a court "will not invalidate a statute on its face simply because it may be applied unconstitutionally, but only if it cannot be applied consistently with the Constitution").

The Plaintiff's claims here are not yet ripe for judicial action. She has not met the other requirements for debate participation. The New Jersey Legislature has not yet funded the 2013 GPFP. (Def. Br. at 8.) The Threshold Provision for 2013 will not be established until 2012. (Id. at 10.)[3] There are not two candidates who have qualified for public funding, the requirement that triggers the debates. (Id. at 9.)

Given the contingent nature of the action, a judgment here would be akin to an advisory opinion. The Plaintiff's arguments rest on contingent future events that may not occur as anticipated, if at all. The Court thus does not find that a judgment at this time would be useful to the parties. See Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1464 (3d Cir. 1994) (finding "a case should not be considered justiciable unless the court is convinced that by its action a useful purpose will be served") (internal quotations and citations omitted); Armstrong World Indus. v. Adams, 961 F.2d 405, 412 (3d Cir. 1992) ("A declaratory judgment granted in the absence of a concrete set of facts would itself be a contingency,

---

[3] This reason is less persuasive, however, because ELEC is required to take the changing costs of election campaigning into account. (Def. Br. at 10) See N.J.S.A. § 19:44A-7.1(b). The threshold is unlikely to decrease in any appreciable way, whereas the Plaintiff has declared an intent to do zero fundraising; thus, any number higher than essentially zero will have the claimed adverse effect on the Plaintiff's campaign. (See Pl. Opp'n at 9.)

14

and applying it to actual controversies which subsequently arise would be an exercise in futility.") (internal quotations and citations omitted).

Even if the Plaintiff had standing and was sure to appear on the ballot, there are "situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional questions until a time closer to the actual occurrence of the disputed event, when a better factual record might be available." Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 143 (1974).  Though the Plaintiff claims to be a "bona fide" candidate and not a "tentative" one (Pl. Opp'n at 2), resolution of her claims will be more conclusive, for example, when she is an official candidate, the New Jersey Legislature has reauthorized GPFP funds, the Threshold Provision for 2013 is set, and the debates are certain to occur.

The Plaintiff's mootness concerns are not necessarily well-founded.  (Pl. Opp'n at 5.)  First, because the Plaintiff claims the Threshold Provision will prevent her from participating in the interactive debates, the occurrence of the debate itself will ultimately determine mootness, not the September 2013 deadline.  See Piccolo, 2007 WL 2844939, at *8. Second, even if the Plaintiff's specific claims are brought again and later judged moot, a reviewing court may apply the "capable of repetition, yet evading review" exception to the mootness

15

doctrine.  Id. at *8 n.13; Baldwin v. Cortes, 378 Fed.Appx. 135, 138 (3d Cir. 2010) (asserting jurisdiction because challenge to plaintiffs' omission from ballot was capable of repetition yet evading review).[4]

Regardless of ripeness or mootness concerns, however, as discussed above the Court will grant ELEC's motion to dismiss for lack of standing.

## CONCLUSION

For the reasons discussed, the Court will grant the Motion, and dismiss the Complaint.  The Court will issue an appropriate order and judgment.

                                                s/ Mary L. Cooper
                                                **MARY L. COOPER**
                                                United States District Judge

Dated: January 25, 2011

---

[4] The Plaintiff's traditional equal protection claims based on her status as an independent candidate face difficulty for two reasons.  First, independent candidates are not a protected class.  Piccolo, 2007 WL 2844929, at *11-12.  Thus, the Threshold Provision would only receive rational-basis review on those grounds.  See Donatelli v. Mitchell, 2 F.3d 508, 513-15 (3d Cir. 1993).  Second, although the Plaintiff contends that the Threshold Provision "reinforces the natural inequalities" between the two main parties and independent and third party candidates (Pl. Opp'n at 10), "States need not remove all of the many hurdles third parties face in the American political arena today."  Timmons v. Twin Cities Area New Party, 520 U.S. 351, 367 (1997).  While States may not "completely insulate the two-party system from minor parties' or independent candidates' competition . . . the States' interest permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system . . . ."  Id. (internal citations omitted).